**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01387 |
| | ) | |
| JEH JOHNSON, in his official capacity as | ) | Judge: John Z. Lee |
| Secretary of the U.S. Department of Homeland | ) | |
| Security; | ) | Magistrate Judge: Daniel G. Martin |
| | ) | |
| LEÓN RODRIGUEZ, in his official | ) | |
| capacity as Director of U.S. Citizenship and | ) | |
| Immigration Services; and | ) | |
| | ) | |
| NICHOLAS COLUCCI, in his official capacity | ) | |
| as Chief of the Immigrant Investor Program | ) | |
| Office, | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff John Doe, by and through his attorneys, Kameli Law Group, LLC, brings this

Amended Complaint against Defendants Jeh Johnson, Leon Rodriguez, and Nicholas Colucci

(collectively, the "Defendants"), and alleges and states as follows:

**INTRODUCTION**

1.      This is a civil action brought by an immigrant investor to challenge the decision of

the United States Citizenship and Immigration Services ("USCIS"), and those acting under USCIS

authority, to deny him lawful permanent residency in the United States.

2.      After granting Plaintiff conditional lawful permanent residency in the United

States, based upon Plaintiff's investment of $500,000.00 in a "new commercial enterprise," as

defined in 8 C.F.R. § 204.6(e), USCIS erroneously and arbitrarily denied the removal of Plaintiff's

conditional resident status and deprived Plaintiff of lawful permanent residency by denying

1

Plaintiff's Form I-829 Petition by Entrepreneur to Remove Conditions ("Plaintiff's I-829 Petition").

3.      As a result, after years of lawful presence in the United States, Plaintiff faces the potential initiation of proceedings to deport and remove Plaintiff from the United States, as well as the loss of financial and emotional resources Plaintiff has invested in establishing his home in the United States.

4.      This lawsuit requests that this Court order Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency.

## JURISDICTION; VENUE

5.      This action arises under Sections 201, 203(b)(5), 216A, and 245 of the Immigration and Nationality Act of 1990 ("INA"), codified as 8 U.S.C. §§ 1151, 1153(b)(5), 1186b, and 1255. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and may review Defendants' actions or omissions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.; and the Equal Access to Justice Act, 28 U.S.C. § 2412.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1391(e) because Defendants are acting in their official capacity as agents of the United States Government, and Plaintiff's investment of $500,000.00 was lent to an Illinois corporation whose principal place of business is within this judicial district.

7.      Venue is also proper under 28 U.S.C. § 1391(e) because USCIS maintains a Field Office in Chicago, Illinois, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

8.     Plaintiff is a conditional lawful permanent resident of the United States, having obtained such status on October 3, 2011 through the Employment-Based Immigration: Fifth Preference category.

9.     Defendant Jeh Johnson is Secretary of the United States Department of Homeland Security ("DHS") and has the ultimate authority over the operations of DHS, which includes USCIS. In that capacity, he is responsible for the administration and enforcement of the immigration laws of the United States. Defendant Johnson is sued in his official capacity.

10.     Defendant Leon Rodriguez is Director of USCIS and has ultimate authority over the operations of USCIS within DHS, including the USCIS Immigrant Investor Program Office. In that capacity, he is responsible for the administration of immigration and citizenship benefits, including Plaintiff's I-829 Petition. Defendant Rodriguez is sued in his official capacity.

11.     Defendant Nicholas Colucci is the Chief of the USCIS Immigrant Investor Program Office located in Washington D.C. In that capacity, he is responsible for and oversees all activities regarding eligibility for an EB-5 Visa. Defendant Colucci is sued in his official capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     There are no administrative remedies available for Plaintiff to exhaust. There is no administrative appeal of a denial of a Form I-829 Petition by Entrepreneur to Remove Conditions ("I-829 Petition"). 8 C.F.R. § 216.6(d)(2).

13.     Even if there were administrative remedies available to Plaintiff, exhaustion is not required in cases governed by the APA where the agency's decision is final and exhaustion is not expressly required by statute. *See* 5 U.S.C. § 704.

14. Plaintiff may seek review of Defendants' decision in removal proceedings before the Executive Office of Immigration Review ("EOIR"), but, to date, the United States Department of Homeland Security ("DHS") has not initiated removal proceedings against Plaintiff.

15. As only DHS has the legal authority to initiate removal proceedings, the issue of Plaintiff's immigration status could remain unresolved for an indefinite period of time.

16. Even if DHS does initiate removal proceedings against Plaintiff, due to the lengthy time (often several years) to conduct Master Hearings and Individual Hearings for those in removal proceedings, the issue of Plaintiff's immigration status could still remain unresolved for a long period of time.

17. Further, even if DHS does initiate removal proceedings against Plaintiff, any such initiation would be based upon Defendants' erroneous and arbitrary denial of Plaintiff's I-829 Petition.

18. Exhaustion of administrative remedies is futile because neither EOIR nor an Immigration Judge have jurisdiction over the violations of the APA and the Constitution of the United States as outlined in this Amended Complaint.

19. For this reason, review of Plaintiff's I-829 Petition before the EOIR in removal proceedings is not a mandatory exhaustion requirement.

## STATUTORY BACKGROUND OF THE EB-5 IMMIGRANT INVESTOR PROGRAM

### The Immigrant Investor Program

20. In 1990, the United States Congress enacted Section 203(b)(5) of the INA, 8 U.S.C. § 1153(b)(5). This provision created a new preference allocation of visas ("EB-5 Visas") for qualified immigrant investors seeking to enter the United States for the purpose of investing in a "new commercial enterprise" ("NCE"), as defined at 8 C.F.R. § 204.6(e).

21.     To qualify for an EB-5 Visa, an immigrant must invest or be actively in the process of investing a minimum of $1,000,000.00 in a new commercial enterprise, or at least $500,000.00 where the investment is being made in a "targeted employment area" ("TEA"), as defined at 8 U.S.C. § 1153(b)(5)(B)(ii).

22.     To qualify for an EB-5 Visa, an immigrant investor must demonstrate that his investment in the NCE created full-time time employment for no fewer than ten (10) United States citizens or aliens authorized to be employed in the United States.  8 U.S.C. § 1153(b)(5)(A)(ii).

23.     In 1993, the United States Congress created the "Immigrant Investor Pilot Program[1]," which encouraged potential immigrants to invest in an NCE through a USCIS-designated "regional center;" entities organized "for the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment."  Section 610, Department of Justice and Related Agencies Appropriations Act, 1993, Pub .L. 102-395, 106 Stat. 1828, 1874 ("1993 Appropriations Act").

**Job Creation under the Immigrant Investor Program**

24.     Under the Immigrant Investor Program, the original requirement that each individual investment create ten (10) full-time jobs for qualifying employees was relaxed, allowing immigrants investing in an NCE through a "regional center" to use "reasonable methodologies for determining the number of jobs created by the pilot program, including such jobs which are estimated to have been created indirectly…."  *See* 1993 Appropriations Act, § 610(c).

25.     The Immigrant Investor Program allows multiple immigrant investors to pool their respective capital investments in an NCE, and for the NCE to invest in a "job creating entity"

---

[1] In 2012, the term "pilot" was removed and the Immigrant Investor Program was extended until September 30, 2015. *See* Pub. L. 112-176, A bill to permanently reauthorize the EB-5 Regional Center Program, the E-Verify Program, the Special Immigrant Nonminister Religious Worker Program, and the Conrad State 30 J-1 Visa Waiver Program.

5

("JCE") for creating the jobs upon which EB-5 eligibility is based. The full amount of capital from each immigrant investor must be first invested in the NCE and then made available to the JCE. *See* <u>Matter of Izummi</u>, 22 I&N Dec. 169, 179 (Assoc. Comm'r 1998).

26.     USCIS' final rules for implementing the provisions of 8 U.S.C. § 1153(b)(5) and the Immigrant Investor Program, specifically in 8 C.F.R §§ 206.4 and 216.6, set forth USCIS' interpretation of the language in 8 U.S.C. §1153(b)(5).

27.     USCIS determined that "reasonable methodologies" used to estimate and confirm job creation include multiplier tables, feasibility studies, and "other economically or statistically valid forecasting devices which indicate the likelihood that the business will result in increased employment. *See* 8 C.F.R. § 204.6(m)(3)(v).

28.     The USCIS Adjudicator's Field Manual states, "[a]n alien investing in a new commercial enterprise affiliated with and located in a regional center is not required to demonstrate that the new commercial enterprise itself directly employs ten U.S. workers; a showing of indirect job creation and improved regional productivity will suffice." *Adjudicator's Field Manual (AFM) Ch. 22.4(a)(2)(A).*

29.     A May 30, 2013 USCIS Policy Memorandum regarding EB-5 Adjudications Policy ("2013 Memo") states that where USCIS has previously concluded that an economic methodology satisfies the requirement of being a "reasonable methodology" to project future job creation as applied to the facts of a particular project, USCIS will continue to afford deference to this determination for all related adjudications, "so long as the related adjudication is directly linked to the specific project for which the economic methodology was previously approved." **Exhibit 1** at 23.

30.     The 2013 Memo also states that "absent a material change in facts, fraud, or willful misrepresentation, USCIS should not re-adjudicate prior USCIS determinations that are subjective, such as whether the business plan is comprehensive and credible or *whether an economic methodology estimating job creation is reasonable.*" **Exhibit 1** at 24 (emphasis added).

31.     The 2013 Memo states that "[d]irect jobs that are intermittent, temporary, seasonal, or transient in nature do not qualify as full-time jobs for EB-5 purposes. Consistent with prior USCIS interpretation, however, jobs that are expected to last for at least two years generally are not intermittent, temporary, seasonal, or transient in nature." **Exhibit 1** at 17.

32.     The 2013 Memo states that "[i]ndirect jobs are those that are held outside of the new commercial enterprise but are created as a result of the new commercial enterprise." **Exhibit 1** at 19.

### The EB-5 Petition Process

33.     To obtain an EB-5 Visa, a foreign national must first file a Form I-526 Immigrant Petition by Alien Entrepreneur ("I-526 Petition") with USCIS.

34.     USCIS adjudicates each I-526 Petition pursuant to the regulatory criteria set forth in 8 C.F.R. § 204.6.

35.     The evidentiary standard by which USCIS requires foreign nationals to demonstrate eligibility in an I-526 Petition is one of "preponderance of evidence," which means that the matter asserted is more likely than not to be true. USCIS has reaffirmed this evidentiary standard in the 2013 Memo. **Exhibit 1** at 2.

36.     The "by the preponderance of the evidence" standard can be further explained as "more likely than not"; even if an adjudicator has some doubt as to the truth, if the petitioner or applicant submits relevant, probative, and credible evidence that leads to the conclusion that the

7

claim is "more likely than not" or "probably true," the petitioner or applicant has satisfied the standard of proof.  **Exhibit 1** at 2.

37.     The 2013 Memo specifically notes that it "is applicable to, and is binding on, all USCIS employees."  **Exhibit 1** at 1.

38.     While each I-526 Petition must be adjudicated on its own merits, *see* <u>Matter of Izummi</u>, 22 I. & N. Dec. 169, 180 (Assoc. Comm'r 1998), if USCIS approves an I-526 Petition presenting a business plan that is compliant with <u>Matter of Ho</u>, 22 I. & N. Dec. 206 (Assoc. Comm'r 1998), and a specific economic methodology, USCIS will defer to the finding that the methodology was reasonable in subsequent adjudications of other I-526 Petitions presenting the same related facts and methodology.  **Exhibit 1** a t 23.

39.     If the I-526 Petition and its supporting documents meet all of the requirements set forth in 8 C.F.R § 204.6 by a preponderance of evidence, USCIS approves the I-526 Petition and sends a notice of approval to the foreign national.  8 C.F.R. § 204.6(k).

40.     The foreign national (and his/her derivative beneficiaries included in the I-526 Petition, if any) can then obtain conditional lawful permanent residency status through immigrant visa processing at a United States Department of State consular post or through adjustment of status in the United States filed with USCIS.

41.     Upon entering the United States or completion of the adjustment of status process, the foreign national (and his/her derivative beneficiaries included in the I-526 Petition, if any) are admitted to the United States as conditional lawful permanent residents.

42.     USCIS adjudicates each I-829 Petition pursuant to the regulatory criteria set forth in 8 C.F.R. § 216.6, which includes evidence that an NCE was established by the immigrant investor; evidence that the immigrant investor invested or was actively in the process of investing

the requisite capital; and evidence that the immigrant investor created or can be expected to create within a reasonable time ten full-time jobs for qualifying employees. *See* 8 C.F.R. § 216.6(a)(4).

43.     The evidentiary standard which USCIS requires immigrant investors to meet in an I-829 Petition is of "preponderance of evidence," which means that the matter asserted is more likely than not to be true. USCIS has reaffirmed this evidentiary standard in the 2013 Memo. **Exhibit 1** at 2.

44.     While each I-829 Petition must be adjudicated on its own merits, *see* Matter of Izummi, 22 I. & N. Dec. at 180, USCIS will not reexamine determinations made earlier at the I-526 Petition stage, and the earlier determinations will be presumed to have been properly decided. **Exhibit 1** at 23.

45.     USCIS is required by statute and by its own regulations to adjudicate each I-829 Petition within ninety days of receipt, or within ninety days of an interview, unless the interview is waived by USCIS, whichever is later. 8 U.S.C. § 1186b(c)(3)(A)(ii); 8 C.F.R. § 216.6(c)(1).

46.     If USCIS approves the I-829 Petition, the condition on the lawful permanent residency status of an immigrant investor (and his/her derivative beneficiaries included in the I-829 Petition, if any) are removed, and the immigrant investor and his/her family remain lawful permanent residents of the United States. 8 U.S.C. § 1186b(c)(3)(B).

47.     If USCIS denies the I-829 Petition, the immigrant investor may request review of such determination in a proceeding to remove the immigrant investor, with the burden being on the Attorney General to establish, by a preponderance of the evidence, that the facts and information alleged in the I-829 Petition are not true and that the petition was properly denied. 8 C.F.R. § 216.6(d)(2).

48.     An immigrant investor whose I-829 Petition is denied (and his derivative beneficiaries included in the I-829 Petition) remains a conditional lawful permanent resident until such time that a non-appealable, final order is issued by the Board of Immigration Appeals at the conclusion of removal proceedings.  *See* Pub. L. 107-273, 21st Century Department of Justice Appropriations Authorization Act.

49.     An immigrant investor whose I-829 Petition is denied may also file suit in U.S. federal district court for the federal courts to answer purely legal questions concerning the denied I-829 Petition. *See, e.g.,* Kyu Seock Lee, Et Al. v. USCIS, 2011 U.S. Dist. LEXIS 157508 at *13 (citing Chang v. United States, 327 F.3d 911, 924 (9th Cir. 2003)).

## FACTUAL BACKGROUND

### Chicagoland Foreign Investment Group, LLC Regional Center Designation

50.     USCIS originally issued a "regional center" designation letter to Chicagoland Foreign Investment Group, LLC ("CFIG"), an Illinois limited liability company, on October 16, 2009.

51.     On March 16, 2010, CFIG requested that USCIS amend its regional center designation to expand its geographic focus and focus of investment activities.

52.     The job creation model contained in the CFIG's amendment request is Regional Input-Output Modeling System II ("RIMS II").   In the amendment request for the 2010 Designation Letter, CFIG indicated it would employ two methods for calculating job creation under RIMS II, depending on the specific investment project.  The first method uses the number of direct jobs created and calculates the total amount of jobs produced directly and indirectly through the RIMS II direct-effect multiplier.  The second method uses the total amount of dollars

invested in a project and calculates the amount of jobs created through the RIMS II final-demand multiplier.

53. On April 10, 2010, USCIS issued an updated "regional center" designation letter (the "2010 Designation Letter") to CFIG.

54. The 2010 Designation Letter indicates that USCIS has accepted the final economic analysis and its indirect job creation model and multipliers contained in CFIG's amendment request.

55. USCIS has accepted and approved the use of aggregate multipliers (determined by the broader North American Industry Classification System ("NAICS") codes) as a reasonable methodology for EB-5 projects sponsored under CFIG's regional center designation (and other non-affiliated regional centers or EB-5 projects) for projecting anticipated direct, indirect, and induced job creation that comports with the INA, USCIS' implementing regulations and USCIS' own guidance concerning EB-5 job creation requirements.

56. The 2010 Designation Letter states that at the time of removal of conditions, an immigrant investor must show that the JCE performed the activities described in the [economic] model and on which the approved methodology is based.

**Elgin Assisted Living EB-5 Fund, LLC**

57. Elgin Assisted Living EB-5 Fund, LLC ("EALEF"), an Illinois limited liability company, is considered a "new commercial enterprise" that is sponsored by CFIG.

58. The purpose of EALEF is to extend a $12,000,000.00 investment loan, pooled from twenty-four immigrant investors pursuant to the Immigrant Investor Program, to Elgin Memory Care, LLC ("EMC"), an Illinois limited liability company, to develop, construct, and operate an assisted living and memory care facility in the City of Elgin, Illinois (the "Facility").

59.     Plaintiff became a member of EALEF after approval of Plaintiff's I-526 Petition and transfer of Petitioner's $500,000.00 investment capital from escrow to EALEF's operating account.

60.     CFIG serves as Manager of EALEF.

### Elgin Memory Care, LLC

61.     EMC is considered a "job creating entity" under USCIS regulations.

62.     EMC must create the requisite number of jobs (at least two hundred forty for the twenty-four immigrant investors and members of EALEF) in order to remove the conditions on the lawful permanent residency status of said members of EALEF.

63.     USCIS has approved multiple employment impact reports regarding EMC's projected total future job creation, and has deemed each economic methodology associated therewith to be reasonable in accordance with 8 C.F.R. § 204.6(m)(3)(v), by approving multiple I-526 Petitions associated with EALEF and EMC that are based on each such employment impact reports.

64.     USCIS approved a January 2010 Employment Impact Report (the "2010 Employment Impact Report") by RCF Economic and Financial Consulting, Inc. ("RCF") submitted in Plaintiff's approved I-526 Petition on June 29, 2011.

65.     As USCIS policy regarding the use of construction jobs became clearer, EMC determined that it would be in the best interest of EMC to assess the indirect and induced economic impacts generated by construction activities of the EMC lasting under two years.

66.     USCIS approved an August 2011 Employment Impact Report by RCF (the "2011 Employment Impact Report") that had been submitted in various I-526 Petitions associated with EALEF and EMC on August 29, 2012.

67.     The 2011 Employment Impact Report included both (1) direct, indirect, and induced employment created by the operation of the Facility and (2) indirect and induced employment generated by construction and development activities lasting under two years, measured in dollars of expenditure.

68.     On or around August 1, 2011, EMC purchased a parcel of land to site the Facility from UIS Development, LLC ("UIS").

69.     Prior to EMC's purchase of this land, UIS purchased the same parcel on the same day from Nesler & Lake-CRE, LLC ("Nesler").

70.     Aside from the sale of the parcel of land for the Facility, neither UIS, nor any of its members or managers, have ever had any business dealings with, and have not been related or affiliated in any way, directly or indirectly with, CFIG, EALEF, EMC, or any their respective managers, shareholders, officers, or directors thereof.

71.     On September 4, 2014, the City of Elgin and the Illinois Department of Transportation approved EMC's final plat and engineering for the parcel where the Facility will be sited.

72.     On September 5, 2014, the City of Elgin issued EMC an Engineering Permit, so that EMC could begin the demolition of the existing structures on the site, grading the site for the Facility, and installing underground utilities for the Facility.

73.     Since September of 2014, EMC has continued to progress on the site work and construction of the Facility as much as weather has permitted.

**Plaintiff's EB-5 Petition Process**

74.     Plaintiff submitted an I-526 Petition to USCIS on May 24, 2010, based upon his April 16, 2010 investment of $500,000.00 into EALEF's escrow account.

75.    Plaintiff's I-526 Petition included the 2010 Employment Impact Report to demonstrate the future creation of jobs by EMC.

76.    USCIS approved Plaintiff's I-526 Petition on June 29, 2011, and Plaintiff was granted conditional lawful permanent resident status on October 3, 2011 after completing the adjustment of status process.

77.    Plaintiff's $500,000.00 investment was made fully available to EMC on July 29, 2011.

78.    Plaintiff submitted his I-829 Petition to USCIS on September 16, 2013.

79.    Plaintiff submitted with his I-829 Petition a letter from CFIG, as Manager of EALEF, dated July 25, 2011, confirming that on June 29, 2011 Plaintiff's full investment of $500,000.00 was transferred from escrow to EALEF's operating account and, on the same date, lent to EMC.

80.    Plaintiff also submitted in his I-829 Petition an affidavit from the Accounting Manager of CFIG, as Manager of EALEF, stating that all of the investment proceeds received by EALEF from Plaintiff had been loaned to EMC.

81.    These documents verified that Plaintiff invested the requisite amount of capital of $500,000.00 prior to the end of Plaintiff's two-year conditional residency period, and, accordingly, Plaintiff submitted sufficient evidence to demonstrate by a preponderance of the evidence that he invested the requisite capital in EALEF, and that the EALEF lent such funds to EMC for EMC to use in accordance with its business plan.

82.    The basis for job creation to support Plaintiff's I-829 Petition was the indirect and induced employment generated by EMC's construction and development activities lasting under two years, measured in dollars of expenditure, as originally stated in the 2011 Employment Impact

Report, an economic methodology that USCIS previously deemed "reasonable" in other USCIS-approved I-526 Petitions associated with EALEF. *See, e.g.,* WAC-12-904-34997.

83.     Plaintiff used the economic methodology contained in the 2011 Employment Impact Report, rather than that contained in the 2010 Employment Impact Report submitted in Plaintiff's approved I-526 Petition, in reliance on the statement in the 2013 Memo that USCIS will afford deference to a previous determination that an economic methodology is "reasonable" for all related adjudications. **Exhibit 1** at 23.

84.     As indicated in Petitioner's I-829 Petition, as of August 29, 2013, a cumulative total of $2.13 million in expenditures were incurred by EMC from 2010 to August 2013 on the construction and pre-operation of the Facility.

85.     Based on the RIMS II Multipliers and the economic methodology contained in the 2011 Employment Impact Report, RCF determined that 11.0 indirect and induced jobs had been created by EMC between 2010 and August 29, 2013 (the "2013 Employment Impact Verification Report").

86.     At the time Plaintiff submitted his I-829 Petition to USCIS, no other I-829 Petitions had been filed by members of EALEF. Accordingly, Plaintiff was entitled to use the first ten (10) indirect and induced jobs of EMC in his I-829 Petition.

### The Request for Evidence

87.     Plaintiff's I-829 Petition was pending for two hundred seventy-eight (278) days when, on June 20, 2014, Plaintiff filed a writ of mandamus complaint in the U.S. District Court for the Northern District of Illinois, Eastern Division (Case No. 14-cv-04665) against the U.S. Department of Homeland Security and USCIS in order to compel the adjudication of Plaintiff's I-829 Petition.

88.     USCIS issued a Request for Evidence ("RFE") on August 15, 2014, requesting the submission of various documents in furtherance of Plaintiff's I-829 Petition.

89.     The RFE indicated that, despite the evidence submitted in his I-829 Petition, Plaintiff had failed "to demonstrate that this requisite amount of capital has been invested and has been sustained within the NCE or made available to the business(es) most closely responsible for creating the employment on upon which the petition is based."

90.     The RFE requested that Plaintiff submit an executed loan agreement between EALEF and EMC to demonstrate that Plaintiff's capital investment had been made available to EMC.

91.     The RFE stated that because Plaintiff did not provide any evidence or an explanation regarding UIS' purchase of the parcel of land on the same day EMC purchased the parcel from UIS, Plaintiff failed to sufficiently demonstrate that his capital investment was made available to EMC.

92.     Even though USCIS had previously approved the same economic methodology for EMC in other USCIS-approved I-526 Petitions, the RFE stated that USCIS found areas of concern with the 2011 Employment Impact Report.

93.     The RFE also asked Plaintiff to break out soft costs, such as engineering, architectural, legal, and design services, under their own RIMS II sectors and employment direct effect multiplier, rather than include the RIMS II multiplier for hard construction costs.

94.     The RFE requested that Plaintiff submit evidence, such as invoices, canceled checks and contracts, to substantiate EMC's spending on the project.

95.     The RFE also requested, but did not mandate, that Plaintiff submit a revised timeline for completion and operation of the Project, even though the job creation for the basis of

16

Plaintiff's I-829 Petition was based on the development and construction expenditures that EMC had already expended as of August 29, 2013, and the corresponding jobs created by EMC as of August 29, 2013 as a result of those expenditures.

### Plaintiff's Response to the Request for Evidence

96.     Plaintiff provided a comprehensive response to the Request for Evidence on October 31, 2014, which was received by USCIS on November 13, 2014 ("RFE Response")

97.     Plaintiff submitted in the RFE Response copies of all wire transfers, and bank statements verifying said wire transfers, which indicated Plaintiff transferred a minimum of $500,000.00 to EALEF by March 29, 2011.

98.     Plaintiff submitted in the RFE Response copies of bank statements from EALEF and EMC which indicated that EALEF transferred Plaintiff's $500,000.00 to EMC on July 29, 2011.

99.     Plaintiff also submitted in the RFE Response a copy an executed loan agreement between EALEF and EMC.

100.     Plaintiff submitted in the RFE Response evidence that USCIS had previously approved the 2011 Employment Impact Report that was submitted in various I-526 Petitions associated with EALEF.

101.     Plaintiff attempted to obtain the real estate sale agreement between UIS and Nesler to include in the RFE Response, but UIS declined to provide said contract or comment on how UIS was able to purchase the property.

102.     Plaintiff submitted in the RFE Response an affidavit from a manager of UIS that stated that UIS is not related or affiliated in any way, directly or indirectly, to CFIG, EALEF, EMC, or any of their respective managers, shareholders, officers, or directors.

103.     Plaintiff submitted in the RFE Response an affidavit from EMC, as well as CFIG, which acts as manager of EALEF, that stated that CFIG, EMC, and EALEF are not related or affiliated in any way, directly or indirectly, to UIS, or any of their managers, shareholders, officers, or directors.

104.     Plaintiff submitted in the RFE Response an explanation regarding the prior real estate sales transaction between UIS and Nesler.

105.     Plaintiff submitted in the RFE Response over five pages of narrative, with documentary evidence, explaining the legitimate reasons behind the delay in making the Facility operational.

106.     Plaintiff submitted in the RFE Response all documents between EMC and the City of Elgin regarding the City of Elgin's approval of EMC's final plat and engineering for the site, as well as a copy of the September 5, 2014 Engineering Permit to EMC, which allowed EMC to begin demolition of the existing structures on the site, grading the site for the Facility, and installing underground utilities for the Facility.

107.     Plaintiff submitted in the RFE Response an affidavit of the developer of EMC who has thirty (30) years of professional experience in the development and construction industry in the State of Illinois indicating that the amount of time it took EMC to obtain all necessary entitlements and approvals from the City of Elgin is very uncommon and should be considered an extreme case.

108.     Plaintiff submitted in the RFE Response photographs taken in October of 2014 demonstrating the progress of EMC in preparing the land for construction.

18

109.     Plaintiff submitted in the RFE Response over twenty exhibits consisting of hundreds of pages of contracts, invoices, and checks to demonstrate that EMC had actually expended the funds used in the 2013 Employment Impact Verification Report.

110.     Plaintiff submitted in the RFE Response an amended 2011 employment impact report which included a sources and uses statement that, per the RFE's request, uses sub-line items to break out soft constructions costs such as engineering, architectural, legal, and design services under their own RIMS II sectors and employment direct effect multipliers.

111.     Plaintiff did not include in the RFE Response a timeline for completion and operation of the Project, as requested (though not mandated) by USCIS, because the basis for job creation to support Plaintiff's I-829 Petition was on the pre-development, development, and soft construction expenditures of EMC that occurred from 2010 to August 29, 2013.

112.     More than the requisite number of new direct, indirect, or induced jobs were created by EALEF's investment of Plaintiff's $500,000.00 in EMC to remove the conditions on Plaintiff's lawful permanent residency status.

**USCIS' Denial of Plaintiff's I-829 Petition**

113.     On January 16, 2015, USCIS denied Plaintiff's I-829 Petition (the "Decision").

114.     The Decision indicated that because Plaintiff did not "assuage USCIS's concerns as to the relationship of the parties to the transaction [of the sale of the parcel of land by Nesler to UIS]," "Plaintiff has not demonstrated that his capital investment was truly made available to the [EMC] and placed at risk for the purpose of generating a return."

115.     Defendants relied on the unfounded and baseless allegation of their own making, despite evidence to the contrary, of illegitimacy of the real estate transaction between UIS and EMC to conclude that Plaintiff had not demonstrated that his capital was truly made available to

EMC; this is a non-sequitur, as Plaintiff's $500,000.00 was made available to and used solely by EMC, and thus was sufficiently "at risk," in conformance with the intent and requirements of the Immigrant Investor Program.

116. Defendants' attempt to connect the alleged illegitimacy of the real estate transaction between UIS and EMC and Plaintiff's sustained, "at risk" investment makes absolutely no sense whatsoever and was used by Defendants solely to deny Plaintiff's I-829 Petition.

117. Despite evidence set forth by Plaintiff in the RFE Response indicating that his $500,000.00 had been lent by EALEF to EMC on July 29, 2011, the Decision indicated that:

> "The fact that EB-5 capital was used to speculate in mutual funds and other fixed income investments, and used as a Pledge Account upon which restrictions on its use may be placed, strongly suggests that the money was not made available to the business most closely responsible for creating the employment upon which the petition is based, name the business relating to construction and operation the assisted living facility."

118. Despite evidence set forth by Plaintiff in the RFE Response that EALEF has loaned all of the EB-5 investment proceeds it received from Plaintiff to EMC, the Decision states that it is "unclear that [Plaintiff's] deposited funds were originated from EALEF as part of the loan proceeds" to EMC because the loan agreement between EALEF and EMC "fails to specify how the loan [of $12,000,000.00] would be distributed to [EMC]."

119. Despite evidence set forth by Plaintiff in the RFE Response that EMC had begun construction on the Facility, the Decision states that "construction of the Project has yet to begin."

120. Despite the evidence set forth by Plaintiff in the RFE Response to demonstrate that EMC had actually expended the $2.13M used in the 2013 Employment Impact Verification Report, the Decision indicates that only $736,036.00 of EMC's expenditures had been provided with proof of payment.

121.    Notwithstanding the Decision's statement that Plaintiff had only submitted proof of payment by EMC of $736,036.00 of EMC's expenditures, the Decision included a table, created by Defendants or their agents, that only shows expenditures of $662,132.00.

122.    The Decision does not specify how USCIS derived either amount of expenditures of EMC, $736,036.00 or $662,132.00, from the evidence submitted by Plaintiff in the RFE Response.

123.    The Decision notes that thirteen (13) total direct, indirect, and induced jobs had been created by EMC's expenditures of $662,132.00, which included four (4) direct jobs and nine (9) indirect and induced jobs.

124.    Despite containing a table indicating that thirteen total direct, indirect, and induced jobs had been created by EMC, the Decision states that as "Petitioner has not provided any timelines establishing that construction will last at least two year," USCIS cannot use said jobs for job creation purposes to remove the conditions on Plaintiff's lawful permanent residency status.

## LEGAL ARGUMENT

125.    The Decision is arbitrary, capricious, and unreasonable because Defendants made an unfounded and baseless allegation, that EMC's purchase of real estate from UIS was not legitimate or an arm's length transaction, which runs counter to the evidence before USCIS submitted in the I-829 Petition and the RFE Response.

126.    Defendants' requirement that Plaintiff submit documentary evidence to explain the real estate transaction between UIS and Nesler, due to Defendants' unfounded and baseless allegation of illegitimacy of the real estate transaction between UIS and EMC, exceeds Defendants' authority and limitations described in 8 U.S.C. § 1153(b)(3) and 8 C.F.R. § 216.6.

127.    Defendants acted in an arbitrary and capricious manner by impermissibly determining that EALEF's loan of Plaintiff's $500,000.00 to EMC was not part of the loan proceeds from EALEF to EMC.

128.    The Decision is unreasonable, arbitrary, and erroneous because Defendants offered an explanation regarding Plaintiff's sustained investment into EALEF, and EALEF's subsequent loan of Plaintiff's investment capital to EMC, that runs counter to the evidence before USCIS submitted in the I-829 Petition and the RFE Response.

129.    Defendants acted in an arbitrary and capricious manner by relying on factors which the United States Congress and USCIS had not intended them to consider regarding Plaintiff's sustained investment into EALEF, and EALEF's subsequent loan of Plaintiff's investment capital to EMC.

130.    Defendants acted in an arbitrary and capricious manner by failing to consider all of the evidence included in Plaintiff's I-829 Petition and Plaintiff's RFE Response regarding Plaintiff's sustained investment into EALEF and EALEF's subsequent loan of Plaintiff's investment capital to EMC.

131.    The Decision is unreasonable, arbitrary, and erroneous because Defendants offered an explanation regarding the status of construction on the Facility that runs counter to the evidence before USCIS submitted in the I-829 Petition and the RFE Response.

132.    Defendants acted in an arbitrary and capricious manner by failing to consider all of the evidence included in Plaintiff's I-829 Petition and Plaintiff's RFE Response regarding the status of construction on the Facility.

133.    Had USCIS used its own tabulation of EMC's expenditures totaling $736,036.00, rather than the table included in page 8 of the Decision showing expenditures of $662,132.00, to

account for the expenditure of an additional $73,904.00 ($736,036.00-$662,132.00 = $73,904.00), it would have realized that the job creation numbers in the 2013 Employment Impact Verification Report submitted in Plaintiff's I-829 Petition was correct.

134. Defendants' explanation regarding EMC's expenditures in the Decision make absolutely no sense whatsoever and was created solely to deny Plaintiff's I-829 Petition.

135. Defendants acted in an arbitrary and capricious manner by failing to consider all of the evidence included in Plaintiff's I-829 Petition and Plaintiff's RFE Response regarding the creation of jobs by EMC, including, without limitation, EMC's expenditure of $2.13M from 2010 to August 29, 2013.

136. For example, the Decision concluded that only $736,036.00 or $662,132.00 (the Decision isn't clear) of funds were expended by EMC, even though Plaintiff provided a ledger produced by an independent accountant as well as supporting documentary evidence that indicated that approximately $2.13M had been expended by EMC.

137. Defendants acted in an arbitrary and capricious manner by impermissibly not counting the nine indirect jobs towards Plaintiff's job creation, as indirect jobs need not last at least two years pursuant to USCIS' own guidance.

138. The Decision is unreasonable, arbitrary, and erroneous because Defendants offered an explanation regarding EMC's expenditures that runs counter to the evidence before USCIS submitted in the I-829 Petition and the RFE Response.

139. The Decision is unreasonable, arbitrary, and erroneous because Defendants' explanation regarding EMC's expenditures is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

140.    Defendants acted in an arbitrary and capricious manner because Defendants' proffered reasons for denying Plaintiff's I-829 Petition are merely a pretext designed to hide prejudice and animus against Petitioner, CFIG, EALEF, and EMC due to Plaintiff's filing writ of mandamus complaint in the U.S. District Court for the Northern District of Illinois, Eastern Division (Case No. 14-cv-04665) against the U.S. Department of Homeland Security and USCIS in order to compel the adjudication of Plaintiff's I-829 Petition.

141.    Defendants acted in an arbitrary and capricious manner because Defendants' denial of Plaintiff's I-829 Petition was merely an action to adjudicate Plaintiff's I-829 Petition as soon as possible, without considering all evidence included in Plaintiff's I-829 Petition or the RFE Response, in order to make Plaintiff's writ of mandamus lawsuit in federal court moot.

142.    Defendants' practices, policies, interpretations of law, and conduct violate the INA and the APA and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, and otherwise not in accordance with law and pursuant to 5 U.S.C. § 706(2)(D) as without observance of procedure as required by law.

## LEGAL STANDARD

143.    To determine whether an agency's decision was arbitrary or capricious, a reviewing court must go beyond the agency's procedures to include the substantive reasonableness of its decision.  This is because reasonable procedures alone cannot absolve a court from making a thorough, probing, in-depth review to determine if the agency has considered the relevant factors or committed a clear error of judgment. But the reasonableness of the agency's procedures is relevant to the court's inquiry.  United States v. P. H. Glatfelter Co., 768 F.3d 662, 670 (7th Cir. 2014).

144.     Under the arbitrary and capricious review, an agency's decision must be upheld unless it has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  Id.

**CAUSES OF ACTION**

**Count I:  Arbitrary and Capricious Action by Adjudicating Plaintiff's I-829 Petition Above and Beyond the Correct "By a Preponderance of Evidence" Standard**

145.     Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count I.

146.     Despite the statement in the Decision that USCIS went through a "careful review and consideration of the entire record, based upon the preponderance of the evidence," it is clear from the terms of the Decision that Defendants applied an improperly high standard of proof to Plaintiff's I-829 Petition above and beyond "by a preponderance of evidence."

147.     Defendants acted in an arbitrary and capricious manner in violation of the APA by adjudicating Plaintiff's I-829 Petition under a heightened standard above and beyond the correct "by a preponderance of evidence" standard, contrary to USCIS' own guidance contained in the 2013 Memo.

148.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a. An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b. An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c. An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d. An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e. An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f. An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g. An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h. An order granting such other and further relief as to this Court seems proper and just under the circumstances.

## Count II: Arbitrary and Capricious Determination
## Regarding Plaintiff' Sustained, "At Risk" Capital Investment

149. Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count II.

150.    Defendants acted in an arbitrary and capricious manner in violation of the APA by impermissibly and unreasonably determining that Plaintiff did not sustain his capital investment and by impermissibly and unreasonably determining that Plaintiff's capital investment was not made available to the JCE and placed at risk for the purpose of generating a return.

151.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.    An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.    An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.    An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.    An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.  An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.  An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.  An order granting such other and further relief as to this Court seems proper and just under the circumstances.

**Count III: Arbitrary and Capricious Determination**
**Regarding Status of Construction of EMC's Facility**

152. Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count III.

153. Defendants acted in an arbitrary and capricious manner in violation of the APA by impermissibly and unreasonably determining that construction on the Facility had not begun.

154. Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions. As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.  An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.  An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.      An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.      An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.      An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.      An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

### Count IV: Arbitrary and Capricious Determination
### Regarding EMC's Expenditures and Job Creation

155.   Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count IV.

156.   Defendants acted in an arbitrary and capricious manner in violation of the APA by impermissibly and unreasonably determining that EMC had not expended enough money to create sufficient direct, indirect, or induced jobs to support the removal of conditions on Plaintiff's lawful permanent residency.

157.   Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.        An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.        An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.        An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.        An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.        An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.        An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.        An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.        An order granting such other and further relief as to this Court seems proper and just under the circumstances.

## Count V: Capricious Denial
## Due to Plaintiff's Exercise of First Amendment Rights

158.   Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count V.

159.   Defendants acted in a capricious manner in violation of the APA by impermissibly and unreasonably denying Plaintiff's I-829 Petition because of Plaintiff's exercise of his constitutional right to petition the government for a redress of grievances under the First Amendment of the Constitution of the United States by filing a writ of mandamus lawsuit to compel the adjudication of Plaintiff's I-829 Petition, rather than because Plaintiff failed to demonstrate eligibility for removal of conditions pursuant to 8 C.F.R. § 216.6.

160.   Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.     An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.     An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.     An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.      An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.      An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.      An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

## Count VI: Exceeding Regulatory Authority by Adjudicating Plaintiff's I-829 Petition Above and Beyond the Correct "By a Preponderance of Evidence" Standard

161.    Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count VI.

162.    Defendants exceeded their regulatory authority by adjudicating Plaintiff's I-829 Petition under a heightened standard above and beyond the correct "preponderance of evidence" standard contrary to their own guidance contained in the 2013 Memo.

163.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.      An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.      An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.      An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.      An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.      An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.      An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

### Count VII: Exceeding Statutory and Regulatory Authority by Requiring Plaintiff to Submit Evidence that Congress and USCIS Had Not Intended to Consider

164.    Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count VII.

165.    Defendants, and those acting under Defendants, exceeded their statutory and regulatory authority and limitations in violation of Section 706(2)(C) of the APA by requiring, as a pre-condition to approval of Plaintiff's I-829 Petition, Plaintiff to provide evidence that the United States Congress and USCIS had not intended to consider in making its decision.

33

166.    Defendants, and those acting under Defendants, exceeded their statutory and regulatory authority and limitations in violation of Section 706(2)(C) of the APA by relying on factors which the United States Congress and even the Defendants had not intended to consider regarding Plaintiff's sustained investment into EALEF and EALEF's subsequent loan of Plaintiff's investment capital to EMC.

167.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.    An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.    An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.    An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.    An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.      An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

### Count VIII:  Exceeding Statutory and Regulatory Authority by Denying Plaintiff's I-829 Petition Due to Plaintiff's Exercise of First Amendment Rights

168.    Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count VIII.

169.    Defendants, and those acting under Defendants, exceeded their statutory and regulatory authority and limitations in violation of Section 706(2)(C) of the APA by denying Plaintiff's I-829 Petition because of Plaintiff's exercise of his constitutional right to petition the government for a redress of grievances under the First Amendment of the Constitution of the United States by filing a writ of mandamus lawsuit to compel the adjudication of Plaintiff's I-829 Petition, rather than because Plaintiff failed to demonstrate eligibility for removal of conditions pursuant to 8 C.F.R. § 216.6.

170.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.      An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.     An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.     An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.     An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.     An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.     An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

g.     An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.     An order granting such other and further relief as to this Court seems proper and just under the circumstances.

**Count IX:  Violation of Due Process by Adjudicating Plaintiff's I-829 Petition Above and Beyond the Correct "By a Preponderance of Evidence" Standard**

171.     Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count IX.

172.     Plaintiff has a significant, fundamental interest to procedural due process in the adjudication of his I-829 Petition.

173.     Defendants' adjudication was contrary to the Due Process Clause of the Fifth Amendment of the Constitution of the United States by adjudicating Plaintiff's I-829 Petition

under a heightened standard above and beyond the correct "preponderance of evidence" standard contrary to their own guidance contained in the 2013 Memo.

174.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' violation of the Due Process Clause of the Fifth Amendment of the Constitution of the United States.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.     An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

b.     An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

c.     An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

d.     An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

e.     An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

f.     An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

37

g.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

h.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

### Count X:  Violation of Due Process by Failing to Consider All Evidence Submitted in Plaintiff's I-829 Petition and RFE Response

175.    Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count X.

176.    Plaintiff has a significant, fundamental interest to procedural due process in the adjudication of his I-829 Petition.

177.    Defendants' adjudication of Plaintiff's I-829 Petition was contrary to the Due Process Clause of the Fifth Amendment of the Constitution of the United States by failing to consider evidence presented to them in reaching their factual and legal conclusions.

178.    Defendants' failure to consider all evidence presented to them in reaching their factual and legal conclusions combined to prejudice Plaintiff and to deny Plaintiff due process.

179.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' violation of the Due Process Clause of the Fifth Amendment of the Constitution of the United States.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.      An order declaring Defendants' denial of Plaintiff's I-829 Petition to be in violation of the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

b.      An order directing Defendants and their agents to reverse the denial of Plaintiff's I-829 Petition and promptly approve Plaintiff's I-829 Petition to remove the condition from his lawful permanent residency;

c.      An order directing Defendants and their agents to immediately issue all necessary and appropriate documentation to Plaintiff evidencing permanent resident status in the United States;

d.      An order directing Defendants and their agents not to consider Plaintiff's presence in the United States as unlawful during the period of time between the denial of Plaintiff's I-829 Petition and the disposition of this litigation;

e.      An order enjoining Defendants and their agents from placing Plaintiff in removal proceedings pending a final determination in this case;

f.      An order enjoining Defendants and their agents from taking any action against Plaintiff to deport, remove, or deem him inadmissible to the United States pending a final determination in this case;

g.      An order enjoining the Defendants and their agents from taking any action to deprive Plaintiff of his right to be employed in the United States during the pendency of this case;

h.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

i.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

## Count XI:  Declaratory Judgment Act

180.    Plaintiff incorporates paragraphs 1 through 144 as if fully stated in this Count XI.

181.    Plaintiff seeks a declaration that Defendants' acts described *supra* are unlawful; *ultra vires*; and constitute violations of legal duties that Defendants owe Plaintiffs under the INA and APA and Due Process Clause of the Fifth Amendment of the Constitution of the United States.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

a.      An order declaring Defendants' denial of Plaintiff's I-829 Petition to be in violation of the INA and its implementing regulations; in violation of the APA, arbitrary and capricious, and not otherwise in accordance with law.

b.      An order declaring Defendants' denial of Plaintiff's I-829 Petition to be in violation USCIS' statutory and regulatory authority and limitations.

c.      An order declaring Defendants' denial of Plaintiff's I-829 Petition to be in violation of the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

d.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

e.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

## ATTORNEY'S FEES

182.    The Equal Access to Justice Act, 28 U.S.C. § 2412, provides for the award of costs and reasonable attorney's fees to a prevailing party in a proceeding for judicial review of an agency action brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. *See* 28 U.S.C. §§ 2412(a) and (d)(1).

183.    As a result of Defendants' unlawful actions, Plaintiff was required to hire counsel and pay counsel reasonable fees and expenses.

184.    Plaintiff is entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412, and the APA, 5 U.S.C. § 504

WHEREFORE, Plaintiff respectfully requests this Court enter judgment on his behalf and issue the following:

f.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

g.      An order granting such other and further relief as to this Court seems proper and just under the circumstances.

Respectfully submitted,

/s/ Joseph M. Barnett
Joseph M. Barnett

**Kameli Law Group, LLC**
111 East Wacker Drive, Suite 555
Chicago, Illinois 60601
Telephone:    (312) 233-1000
Facsimile:    (312) 233-1007

**Dated:    April 10, 2015**